IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSE VELEZ                              :
                                        :
            Plaintiff,                  :
                                        :
      v.                                :       Civil Action. No.: 5:24-cv-00481
                                        :
PA STATE TROOPER                        :
JERRY CESSNA,                           :
                                        :
            Defendant.                  :

## MEMORANDUM OPINION

Plaintiff, Jose Velez (Velez) brings this suit under 42 U.S.C. § 1983, alleging

that Defendant, Pennsylvania State Trooper Jerry Cessna (Trooper Cessna/Cessna),

violated his civil rights protected under the 4th and 14th Amendments to the United

States Constitution.  Specifically, Velez's Complaint asserts that Trooper Cessna,

without probable cause, "knowingly and intentionally maliciously prosecuted [him]

after [Trooper Cessna] knew, or should have known, that [ ] Velez was not the person

who" participated in a drug transaction with a confidential informant. Pl.'s Compl at

8-9.  Trooper Cessna has now moved for summary judgment, arguing that the

undisputed material facts show that Velez is unable to satisfy the elements of

malicious prosecution. Def.'s Mot. Summ. J. at 3. For the reasons that follow, Trooper

Cessna's motion for summary judgment is granted.

## I.    Background

In March of 2019, Trooper Cessna was assigned to the Pennsylvania State

Police Vice Unit and was actively investigating someone named "Cisco."  Cisco was

identified as the supplier for multiple drug dealers in Lancaster County, Pa.  Cessna

Dep. at 29-32. During this investigation, multiple confidential informants reported that Cisco supplied drugs to a "Tito" Jose Velez, Jr. *Id.* at 26, 32-33.

Based on the informants' identification of Velez by name, Cessna procured a photo from a state-run database of a person named "Jose Velez."[1] *Id.* at 137-139. Cessna then showed the photograph to one of the Confidential Informants (CI) who he had successfully used in the past. The CI confirmed that the person in the photograph was the seller of narcotics. *Id.* at 20-22, 137-139. This photograph depicted the Plaintiff in this matter, Jose Velez. *Id.* at 139-139. Satisfied with the CI's identification of the Suspect,[2] Cessna coordinated two separate undercover controlled-buys of heroin between Cessna – acting undercover, the CI, and the Suspect. Pa. State Police (PSP) Incident Report at 3,6.

The undercover controlled-buys occurred on March 7 and March 11 of 2019. On March 7, the CI called the Suspect in the presence of Trooper Cessna and arranged to meet at a Turkey Hill establishment in Lancaster, Pa. *Id.*at 34-35. The CI used speaker phone so that Cessna was privy to the details of the deal and heard the Suspect's voice during the communication. *Id.* At the time of the arranged meet, the CI was seated in the front passenger seat of Cessna's state-issued pickup truck. Cessna Preliminary Hearing (PH) at 5. When Cessna and the CI pulled into the arranged location, the Suspect was already there waiting in an Infinity model vehicle. Def.'s Mot. Summ. J. at 5; PSP Incident Report at 16. The CI exited the vehicle and

---

[1] Cessna testified that he retrieved the photograph through Pennsylvania Department of Transportation driver's license records or criminal history records reflecting a mugshot. *See* Cessna Dep. at 20-22.

[2] As Plaintiff was never convicted of the underlying drug offenses, the Court endeavors to separate the identity of Plaintiff from the person suspected of committing these crimes but referring to the person identified by the CI as "Suspect."

handed the Suspect $200 of pre-recorded cash. Cessna PH at 5. In exchange, the Suspect handed the CI 22 blue wax bags of what was then believed to be heroin. PSP Incident Report at 3.

Cessna, seated in the driver seat of his state issued truck, was witness to the entire transaction. Cessna PH at 5-6; Cessna Dep. at 115. Once the transaction was complete, the CI introduced Cessna to the Suspect. The Suspect, speaking to Cessna directly, explained that he could contact him should he need drugs in the future and provided him with a cell phone number where he could be reached. PSP Incident Report at 3; Cessna PH at 6; Cessna Dep. at 35-37. Once the CI returned to the vehicle, he gave the drugs to Trooper Cessna. PSP Incident Report at 3. A field test confirmed that the substance in the bags contained heroin. *Id.*

On March 11, 2019, Cessna texted the Suspect directly to purchase more heroin. PSP Incident Report at 6. The Suspect responded and agreed to meet Cessna at the same location. *Id.* Suspect arrived at the location in a Buick model vehicle shortly after Cessna. *Id.*; PSP Incident Report at 6. Upon arrival the Suspect exited his vehicle and walked over to Cessna's truck. Cessna gave the Suspect $200 in pre-recorded cash in exchange for 26 bags of heroin. PSP Incident Report at 6. The Suspect told Cessna that the heroin was "new and that everyone said it was good" and to contact him if he needs more. *Id.* A field test confirmed that the substance in the bags received on March 11 also contained heroin. *Id.*

In addition to the physical narcotics evidence obtained on March 7 and March 11, both transactions were observed by PSP surveillance personnel strategically posted near the arranged meet. Cessna Dep. at 24, 46. Further, video surveillance

3

was obtained via Lancaster City Coalition Cameras and was subsequently used by the Lancaster County District Attorney's Office to create still photos of the Suspect around the time of the transactions. *Id.* at 91-92.

On January 23, 2020, after having personally participated in two controlled drug transactions with an individual he believed to be Plaintiff in this matter, Cessna filed two criminal complaints against Velez. PSP Incident Report at 7-9. The complaints, each accompanied with affidavits of probable cause detailing both transactions, charged Velez with selling heroin on March 7 and March 11 of 2019, in violation of Pennsylvania's Controlled Substances Act, 35 P.S. § 780-113(a)(30). *Id.* at 9; Def's Mot. Summ. J. at Ex. 4. Following the Magistrate's review, a warrant was issued for Plaintiff's arrest. PSP Incident Report at 9. In June of 2020, Plaintiff was stopped in Pike County, Pa. and arrested on the this felony warrant. *Id.* at 10.[3]

At the September 8, 2020 preliminary hearing, Trooper Cessna[4] was questioned extensively regarding his investigation and subsequent identification of Plaintiff. *See generally* Cessna PH. Specifically, Cessna was questioned with respect to his perceived failure to record important identifying information including the suspect's telephone number, vehicle plate and registration information, and failure to recover any of the pre-recorded cash used in the controlled transaction. During the

[3] The PSP incident report indicates that Plaintiff surrendered to PSP Lancaster on July 6, 2020, at which time he was fingerprinted photographed. PSP Incident Report at 11. He was then transported to Lancaster City Police Department here he was video arraigned and released on unsecured bail. *Id.* It is unclear from the record how Plaintiff's Pike County arrest connects to his Lancaster arraignment. *See id.; but see* Def's Mot. Summ. J. at Ex. 5 (Arrest Report) at 4.

[4] At the time of the preliminary hearing, Trooper Cessna had been reassigned to a different PSP unit and the investigation was being headed up by Corporal Anthony Holloway, who happened to be part of the surveillance team observing the March 2019 drug transactions. Cessna Dep. at 45, 66-67.

preliminary hearing Cessna identified Plaintiff as the individual who sold heroin to him and the CI on March 7 and March 11 of 2019.  Cessna PH at 4-5.

In the months after the preliminary hearing, Corporal Anthony Holloway (Cpl. Holloway) continued to investigate and monitor Velez's case.  In September of 2022, Cpl. Holloway received an e-mail from Lancaster County Assistant District Attorney (ADA) Cody Wade, listing the names and contact information of three of Velez's alibi witnesses: Velez's brother Charles Olivencia, sister Jenifer Agrispin, and Mother Ruth Olivencia.  PSP Incident Report at 15.  On September 26, 2022, Cpl. Holloway was able to contact mother, Ruth Olivencia.  *Id.*  She explained that she had "looked at the picture and knew it was not her son."[5]  *Id.*  She further stated that that Velez had moved to Bushkill in 2018 to be closer to family and that on the dates in question she believed him to be with family because her birthday (March 6) would have just passed.  *Id.*

On October 6, 2022, Cpl. Holloway informed ADA Elizabeth Rall that he was only able to speak with Velez's mother regarding the alibi.  *Id.* at 16.  Cpl. Holloway also relayed that he was unable to reach by telephone the other two other alibi witnesses but seemed to indicate that multiple people living at Mother's residence would vouch for Velez's alibi.  Of note, Cpl. Holloway's PSP Incident Report entry documenting his contact with ADA Rall indicated that he discovered information previously unrecorded in Velez's investigation files.  Cpl. Holloway's entry reads as follows:

> Also in the file there were two vehicle registrations. One reg was run on the day of the first buy 03/07/2019 but for some reason the investigator

---

[5] From the record it appears that Velez's mother is referring to the still photos produced by the ADA using the Lancaster City Coalition camera's

did not include it in the report, but the car was an INFINITI that came back to a Amanda COBO of 19 Badger Drive, BUSHKILL where his family is an where he was supposed to be the day of the first buy. The second buy on 03/11/2019 the tag of the car he arrived in comes back to a Alicia Ortiz of 75 Lincoln West Dr., Mountville, which is the same neighborhood that VELEZ's sister Jenifer Agrispin lives in."

*Id.* (emphasis in original).

On May 19, 2023, the Lancaster ADA's office dismissed the case against Plaintiff Velez. *Id.* at 18. ADA Rall, after speaking with Cessna, determined that there had not been contact with the CI after Valez's arrest in this case. *Id.* Based on the CI's absence, the decision was made to close the case, as it was likely that his testimony would be needed for trial. *Id.*

On February 1, 2024, Velez filed this civil rights action asserting a violation under the 4th and 14th Amendments to the United States Constitution[6] of his right to be free from malicious prosecution. Pl.'s Compl. at 8-9. Trooper Cessna moves for summary judgment asserting that Velez is unable to satisfy the elements of a malicious prosecution claim. Def.'s Mot. Summ. J. at 3.

## II.   Standard of Review

Summary judgment is appropriate "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to [] judgment as a matter of law." *Mann v. Palmerton Area School District*, 872 F.3d 165, 170 (3d Cir. 2017) (citation and internal quotation marks omitted). A

---

[6] In his original complaint, Velez asserted claims under the 14th Amendment. Pl's Compl. at 8-9. In response, Cessna argued that there is no substantive due process right to be free from a malicious prosecution under the 14th Amendment. Def.'s Mot. Summ. J. at 18. In response Velez conceded this argument. Def.'s Resp. Opp'n. at 20. As such, this Court does not examine Plaintiff's 14th Amendment claim.

fact is "material" if, under the applicable substantive law, it is essential to the proper disposition of the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

The party moving "under Fed. R. Civ. P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact. When determining whether there is a triable dispute of material fact, the court draws all inferences in favor of the non-moving party." *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 819-820 (3d Cir. 2006) (citations omitted) (internal quotation marks omitted)

The movant's initial burden does not relieve complainant's obligation of producing evidence that would support a jury verdict. *Anderson*, 477 U.S. at 256. Because a motion for summary judgment looks beyond the pleadings, the opposing party must advance specific facts showing that there is a genuine factual dispute. *See Marshall v. Sisters of Holy Family of Nazareth*, 399 F.Supp.2d 597, 598 (E.D. Pa. 2005). The non-movant may not rest on their pleadings but must point to probative evidence tending to support the complaint. *Anderson*, 477 U.S. at 256. If the "evidence presented by the non-movant is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-250.

## III.    Discussion

To prevail on a malicious prosecution claim, a plaintiff must plead and prove that : (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4)

the defendants acted malicious or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020). In this case, the viability of Velez's malicious prosecution action hinges on the third prong; whether Cessna had probable cause to initiate the criminal complaints accusing him of violating Pennsylvania's Controlled Substances Act, 35 P.S. § 780-113(a)(30).

"Probable cause for the purpose of malicious prosecution actions has been defined as: reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." *Napier v. City of New Castle*, 407 Fed.Appx. 578, 583 (3d Cir. 2010) (citation and internal quotation marks omitted). Probable cause is established if, at the moment of arrest, "the facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id.* (internal citation and punctuation omitted) (*citing Beck v. Ohio*, 379 U.S. 89, 91 (1964)); see *also Harvard*, 973 F.3d at 199-200. At the summary judgment stage, the existence of probable cause is assessed based on the totality-of-the-circumstances available to the officer effectuating the arrest. *Harvard*, 973 F.3d at 200. The reviewing court must evaluate these circumstances in the light most favorable to the complainant. *Id.*

Here, probable cause is fatal to Velez's malicious prosecution claim. Trooper Cessna's investigation, culminating in Velez's arrest, was supported by both a

reliable CI's identification of a person he believed to be Velez and Cessna's own identification during his undercover participation in the controlled-buys.

In *Napier v. City of New Castle*, the Third Circuit resolved a nearly identical scenario in favor of the arresting officers. 407 Fed.Appx. 578. There, as plaintiff argues here, the investigating and arresting officers misidentified Napier and charged her with drug crimes that were later dropped by the prosecuting attorney. However, at the time of Napier's arrest, the facts available to the arresting officer were that "Napier had been identified by the CI, that [the officer] had witnessed a woman selling drugs who looked like Napier's driver's license photograph, [and] that Napier resembled the woman he had seen selling drugs--albeit with a different hairstyle and weight[.]" *Id.* at 583. Affirming the district court's grant of summary judgment, the Third Circuit held that at the time of arrest the circumstances were "sufficient for a reasonable officer to believe that Napier was guilty of the offense, and there fore establish[ed] probable cause for the arrest." *Id.*

Velez argues that "Cessna knew **at the preliminary hearing and throughout the later criminal proceedings** that" the photo used by the CI to identify the Suspect "did not match the video and stills of the Suspect" from the Lancaster City Coalition Camera's and that Cessna "deliberately failed to disclose and otherwise concealed this." Pl.'s Resp. Opp'n at 17 (emphasis added). Separate from the fact that Plaintiff fails to support this assertion with evidence in the record, it cannot withstand the analysis in *Napier, supra,* holding that the court must examine what the officer knew *at the time of the arrest.* Presuming Trooper Cessna misidentified Velez at the outset of his investigation, the caselaw is clear that this

honest misidentification does not destroy the presence of probable cause at the time of the arrest. *See Pinkney v. Meadville, Pennsylvania*, 648 F.Supp.3d 615, 638 (W.D. Pa. 2023) (the court examines only that information known to the officer at the time of the arrest in assessing probable cause).

To the extent Velez's action rests on Cessna's alleged knowing or reckless disregard for the truth or concealment of exculpatory evidence, these claims must also fail. In addition to suggesting that Cessna is culpable for not procuring additional photographical evidence to perfect his identification of Velez as the suspect,[7] Velez asserts "that Cessna withheld information … regarding the existence and investigation of" the automobiles associated with the controlled-buys. Pl.'s Resp. Opp'n at 17.

Velez is correct that officers "can be found liable for malicious prosecution if they knowingly or with reckless disregard for the truth concealed excuplpatory evidence or provided false or misleading reports to a prosecutor or otherwise interfered with the prosecutor's ability to exercise independent judgment." *Napier*, 407 Fed.Appx. at 584. (citation and internal quotation marks omitted). However, Velez points to no competent evidence that Cessna's omission of this vehicle registration information was reckless or intentional. In fact, Cpl. Holloways recovery of the information and inclusion in a subsequent PSP Incident Report seems to indicate that Cessna or his team did record the vehicle registration number during the investigation. *See* PSP Incident Report at 16. What's more, the vehicle

---

[7] *Contra Vassallo v. Timoney*, No. 00-84, 2001 WL 1243517, at *7 (E.D. Pa. Oct. 15, 2001), aff'd, 40 Fed.Appx 734 (3d Cir. 2002) (an officer who has probable cause to arrest is not required to conduct further investigation for exculpatory evidence or to pursue the possibility that the suspected offender is innocent)

registration that Velez accuses Cessna of concealing was associated with an address in Bushkill, Pa., the same township Velez's alibi witness puts him on the day of the alleged transaction.[8] What Velez posits as exculpatory evidence withheld by Trooper Cessna in reality is unmistakenly inculpatory evidence, potentially linking Velez to the scene of the transactions.

Finally, it is also worth noting that the Third Circuit has never found there to be a right to an adequate police investigation. *See Lewis v. City of Philadelphia*, No. 19-2847, 2020 WL 1683451 at *11 (E.D. Pa. Apr. 6, 2020). Overall, Velez's claims amount to the general complaint that Cessna should have been more thorough in his investigation. However, Plaintiff has failed to point to any record evidence establishing a dispute of material fact relative to the presence of probable cause at the time of his arrest. Accordingly, Plaintiff cannot sustain a claim for malicious prosecution. For these reasons, Defendant's motion for summary judgment is granted. An appropriate order will follow.

GAIL A. WEILHEIMER, J.

---

[8] This Court takes judicial notice of the fact that Bushkill is located in Pike County, more than 100 miles away from where the controlled-buys took place.